FILED

2026 Mar-16  AM 09:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **ERIC MUSSO,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **2:25-cv-00239-MHH** |
| **CITY OF TRUSSVILLE,** | ) | |
| *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Eric Musso has sued the City of Trussville and Officers William Smoot, Duncan Hellums, Jordan Arrington, Oscar Lopez, and Joseph Dunn for federal and state claims arising from the officers' arrest of Mr. Musso during a traffic stop. (Doc. 15). Mr. Musso alleges § 1983 claims against the officers based on excessive force, unreasonable seizure, and failure to intervene, (Doc. 15, pp. 8–12, ¶¶ 38–62), and a § 1983 municipal liability claim against the City, (Doc. 15, pp. 12–13, ¶¶ 63–70).[1] Mr. Musso also alleges state law claims of negligence, wantonness, and assault and battery against Officers Smoot, Hellums, and Arrington, (Doc. 15, pp. 14 – 16, ¶¶ 78–95), and a state law claim for municipal liability against the City,

---

[1] 42 U.S.C. § 1983 is the federal statute through which individuals may assert claims against state and municipal officials for alleged violations of the United States Constitution and federal laws.

(Doc. 15, pp. 13–14, ¶¶ 71–77).

The defendants have asked the Court to dismiss Mr. Musso's § 1983 claim against the City, negligence and wantonness claims against the officers, and municipal liability claim against the City. (Doc. 17). This opinion resolves the defendants' motion. The Court first discusses the standards that a district court must use to evaluate motions to dismiss. Then, applying those standards, the Court describes Mr. Musso's factual allegations in the light most favorable to Mr. Musso. Finally, the Court evaluates the defendants' arguments for dismissal given Mr. Musso's factual allegations.

## I.

Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair

2

notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the allegations in the complaint and construes the allegations in the light most favorable to the plaintiff. *Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).

## II.

On February 13, 2023, while driving in Trussville, Alabama, (Doc. 15, p. 4, ¶12), Mr. Musso began "experience[ing] car trouble," (Doc. 15, p. 4, ¶13). Trussville Police Officer William Smoot pulled Mr. Musso over.  (Doc. 15, p. 4, ¶13).  Mr. Musso "brought his vehicle to a complete stop," "peacefully opened the door," and "retrieved his identification."  (Doc. 15, p. 4, ¶¶14, 16).

Officers Smoot, Duncan Hellums, and Jordan Arrington then "yelled and demanded [Mr. Musso] exit his vehicle."  (Doc. 15, p. 4, ¶17).  At the officers' direction, Mr. Musso exited and moved to the back of his vehicle.  (Doc. 15, p. 4, ¶18).  Mr. Musso "had no outstanding warrants" when he was stopped, and he "did everything" the officers "asked [him] to do."  (Doc. 15, p. 4, ¶¶15, 18).

Officers Oscar Lopez and Joseph Dunn arrived at the scene.  (Doc. 15, p. 5, ¶19).  Officers Smoot and Arrington then "grabbed" and "attempted to handcuff" Mr. Musso "without justification or warning."  (Doc. 15, p. 5, ¶20). Officer Hellums

"repeatedly demanded" that the officers "leave [Mr. Musso] out of cuffs." (Doc. 15, p. 5, ¶21).

Though Mr. Musso was "compliant, peaceful, non-threatening, and did not resist" the officers, (Doc. 15, p. 5, ¶23), Officers Smoot, Arrington, and Hellums "violently threw and forced [Mr. Musso] to the ground and handcuffed him." (Doc. 15, p. 5, ¶22). The officers "cursed and yelled" at Mr. Musso. (Doc. 15, p. 5, ¶25). "One of the officers had his knee in [Mr. Musso's] back as [Mr. Musso] cried out in pain." (Doc. 15, p. 5, ¶25). Mr. Musso "repeatedly asked why he was being forcefully arrested." (Doc. 15, p. 5, ¶26). Officers Lopez and Dunn watched as Officers Smoot, Arrington, and Hellums "forced [Mr. Musso] to the ground" but did not intervene. (Doc. 15, p. 5, ¶24).

Mr. Musso alleges that, before his arrest, the City "allowed and ratified a practice of misconduct from its' officers – including using excessive force on compliant, non-threatening, and non-resisting individuals." (Doc. 15, p. 7, ¶34). Mr. Musso incorporates the allegations from another pending § 1983 case in which City of Trussville officers allegedly entered a home and used excessive force to arrest three individuals who "were non-threatening, did not pose an immediate risk of harm to officers, and were not resisting." (See Doc. 15, pp. 7–8, ¶¶35–37) (citing *Gregory v. City of Trussville*, 2:24-cv-00214-GMB (N.D. Ala. 2024).

During his arrest, Mr. Musso "experienced substantial and severe physical injuries." (Doc. 15, p. 5, ¶27). On February 15, 2023, Mr. Musso "was diagnosed with contusions of the hip, elbow pain, and wrist sprain." (Doc. 15, p. 6, ¶28). By February 20, 2023, Mr. Musso's injuries "had worsened." (Doc. 15, p. 6, ¶29). Mr. Musso "complained of headaches . . . a knot on his head from when he hit the ground, elbow pain, and ankle pain." (Doc. 15, p. 6, ¶29). Mr. Musso "was diagnosed with a concussion and given a brace for his leg." (Doc. 15, p. 6, ¶29). Mr. Musso has since "sought treatment from various providers for extensive injuries sustained during the arrest, including . . . headaches, neck pain, leg pain, wrist pain, back pain, hip pain, and nerve damage." (Doc. 15, p. 6, ¶30). Mr. Musso has "undergone carpel tunnel and back surgery" to treat his injuries. (Doc. 15, p. 6, ¶31). Mr. Musso has also experienced "humiliation, degradation, stress, anxiety, and symptoms consistent with post-traumatic stress disorder." (Doc. 15, p. 7, ¶32). Mr. Musso "incurred significant economic loss" for "treating . . . his injuries." (Doc. 15, p. 7, ¶32).

## III.

The City argues that Mr. Musso has not stated a plausible § 1983 claim against it because the "Amended Complaint fails to identify any custom, policy, or practice adopted by Trussville that could constitute the 'moving force' behind [Mr. Musso's] alleged injuries." (Doc. 17, p. 7). The City asserts that the complaint is devoid of

any specific factual allegations that "support [Mr. Musso's] claim that such a custom, policy, or practice exists." (Doc. 17, p. 7). The City also argues that "proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality" and "references to prior and substantially similar alleged acts of police officer misconduct are meaningless" unless proven. (Doc. 17, p. 6).

"[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents," but § 1983 remains an avenue for relief where "execution of a government's policy or custom . . . inflicts the injury." *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 694 (1978). In other words, a municipality may be liable under § 1983 directly for its own actions but not on a vicarious liability or *respondeat superior* theory. *Baxter v. Roberts*, 54 F. 4th 1241, 1270 (11th Cir. 2022) (citing *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). To assert a claim against the City of Trussville, Mr. Musso must allege that his constitutional rights were violated, that the City of Trussville has a custom or policy that constituted deliberate indifference to his constitutional rights, and the policy or custom caused the constitutional violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).

For purposes of *Monell* liability, "[a] plaintiff can establish the existence of a municipal policy . . . by (1) pointing to an official policy; (2) identifying 'a widespread practice that, although not authorized by written or express municipal

6

policy, is so permanent and well settled as to constitute a custom or usage with the force of law'; or (3) demonstrating that the municipality 'tacitly authorized' or 'displayed deliberate indifference towards' the 'constitutionally offensive actions of its employees.'" *Baxter*, 54 F. 4th at 1270 (quoting *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1308 (11th Cir. 2001)) (alterations adopted).  "[T]o demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice.  Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986).  "A municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a 'custom or policy' if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct." *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987).

Mr. Musso's complaint does not allege a policy or custom that would open the City to § 1983 liability.  He does not point to an "official policy" or make allegations of events that amount to a "widespread practice."  Mr. Musso alleges, without factual support, that the officers "were acting as law enforcement officers pursuant to the policies, customs, and practices of the City of Trussville" at all relevant times.  (Doc. 15, p. 12, ¶65).  Mr. Musso does not state what those policies,

customs, or practices were or allege facts from which the Court may fairly infer a policy, custom, or practice to support municipal liability.

As noted, Mr. Musso asserts that before his arrest, the City "allowed and ratified a pattern of misconduct . . . including using excessive force on compliant, non-threatening, non-resisting individuals." (Doc. 15, p. 7, ¶34). Mr. Musso refers to allegations regarding another purported incident of Trussville police officers using excessive force from *Gregory v. City of Trussville*, 2:24-cv-00214-GMB (N.D. Ala. 2024). (Doc. 15, pp. 7 – 8, ¶¶35–37). These allegations fall short of a plausible claim of a City policy or custom.

> "Proof of a single incident of unconstitutional activity is not sufficient to impose liability" against a municipality. *City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436, 85 L. Ed. 2d. 791 (1985) (plurality opinion). . . . "A single incident would not be so pervasive as to be a custom," *Grech* [*v. Clayton Cnty., Ga.*], 335 F.3d [1326 (11th Cir. 2003) (en banc)] at 1330 n.6, because a custom must be such "a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it," *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991). . . . "In the absence of a series of constitutional violations from which deliberate indifference can be inferred, the plaintiff must show that the policy itself is unconstitutional." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000).

*Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310-11 (11th Cir. 2011) (alterations adopted). Mr. Musso cannot establish a policy or custom by pointing to one past, unproven complaint. *See Brooks v. Scheib*, 813 F.2d 1191, 1193, 1196 (11th Cir.

1987) (reversing judgment for plaintiff on a § 1983 municipal liability claim where he "relied solely on unsubstantiated past complaints").

Moreover, the alleged circumstances of Mr. Musso's arrest are not "substantially similar" to alleged circumstances of the arrests in *Gregory*. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).[2] To establish a policy or custom based on past occurrences of conduct, a plaintiff must demonstrate a pattern of "incidents involving similar facts." *Mercado*, 407 F.3d at 1162. The alleged use of excessive force in *Gregory* occurred while officers were executing a search warrant in a home, not during a traffic stop, as in Mr. Musso's case. *Compare Gregory*, 2:24-cv-00214-GMB, (Doc. 71) *with Musso*, 2:25-cv-00239-MHH, (Doc. 15). Therefore, the allegations in *Gregory* do not support Mr. Musso's allegation that the City engaged in a pattern or practice that caused the alleged violation of his constitutional rights. *See Mercado*, 407 F.3d at 1162.[3]

---

[2] Rule 201(b) of the Federal Rules of Evidence authorizes a court to take judicial notice of facts that are not "subject to reasonable dispute" because the facts are capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b)(2). "Public records are among the permissible facts that a district court may consider." *Universal Express, Inc. v. U.S. S.E.C.*, 177 Fed. Appx. 52, 53 (11th Cir. 2006) (holding that, in resolving a motion to dismiss, Florida district court could take judicial notice of a complaint filed in federal district court in New York without converting the motion to dismiss into a motion for summary judgment). The Court takes judicial notice of the facts alleged in the operative complaint in *Gregory*.

[3] In his response to the defendants' motion to dismiss, Mr. Musso argues that his claims are sufficient to state a § 1983 claim against the City for "failure to train." (Doc. 17, pp. 4–7). A plaintiff may demonstrate a "municipal policy or custom" by demonstrating that a city failed to provide adequate training in a way that "a deliberate indifference to the rights of its inhabitants." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). To establish deliberate indifference, "a

9

Although Mr. Musso formulaically invokes the language of a "policy or custom," he alleges no "series of constitutional violations" from which the Court may infer a policy, custom or deliberate indifference on the part of the City. The Court must accept Mr. Musso's factual allegations, but not his legal conclusions. *Iqbal*, 556 U.S. at 678. Therefore, Mr. Musso has not stated a plausible § 1983 claim against the City.

*** 

The individual officers argue that discretionary function immunity shields them from liability for negligence and wantonness. (Doc. 17, pp. 10–21). Under Alabama law, police officers are immune from civil liability for conduct performed in "any discretionary function within the line and scope of his or her law enforcement duties." ALA. CODE § 6-5-338(a) (1975) (repealed October 1, 2025).[4] The test set forth in *Ex parte Cranman* governs the scope of immunity under Ala. Code § 6-5-338(a). *See Ex parte Cranman*, 792 So. 2d 392 (Ala. 2000), as modified by *Hollis v. City of Brighton*, 950 So. 2d 300, 309 (Ala. 2006). Under *Cranman*,

---

plaintiff must present some evidence that the municipality knew of a need to train" and chose "not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). Evidence of a city's knowledge may be shown by "a pattern of similar constitutional violations" of which the city knew. *See Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). As discussed, Mr. Musso has not alleged a pattern of similar constitutional violations. Accordingly, Mr. Musso's § 1983 municipal liability claim fairs no better under his failure to train theory.

[4] The Alabama legislature repealed ALA. CODE § 6-5-338, effective October 1, 2025. 2025 Ala. Laws Act 2025-423 (2025). Because Mr. Musso's cause of action accrued before October 1, 2025, ALA. CODE § 6-5-338 governs in this matter.

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's . . . exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons, or serving as peace officers under circumstances entitling such officers to immunity pursuant to § 6–5–338(a).

*Hunter v. City of Leeds*, 941 F.3d 1265, 1283–84 (11th Cir. 2019) (quoting *Ex parte City of Homewood*, 231 So. 3d 1082, 1087 (Ala. 2017)).  Officers are not entitled to discretionary function immunity if "(1) the U.S. Constitution, federal law, the state Constitution, or state laws, rules, or regulations . . . require otherwise; or (2) the agent acts 'willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.'" *Hunters*, 941 F.3d at 1283–84 (quoting *City of Homewood*, 231 So. 3d at 1086; *Cranman*, 792 So. 2d at 405).

An officer asserting discretionary-function immunity "bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle [the officer] to immunity." *Ex parte Kennedy*, 992 So. 2d 1276, 1282 (Ala. 2008) (citing *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006)).  If the officer meets that burden, then the burden shifts to the plaintiff to show that the officer is not entitled to discretionary-function immunity. *Kennedy*, 992 So. 2d at 1282.

The officers have demonstrated that they were performing a discretionary law enforcement function in executing an arrest.  "Police investigations and arrests

11

usually are considered discretionary function[s] within the line and scope of . . . law enforcement duties for the purposes of discretionary-function immunity." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1268 (11th Cir. 2010) (internal quotations and citations omitted). Therefore, the officers are entitled to discretionary function immunity unless Mr. Musso can demonstrate that an exception applies. *Cranman*, 792 So. 2d at 405.

The officers did not act beyond their authority at any time relevant to the Court's immunity analysis. "A State agent acts beyond authority and is therefore not immune when he or she fail[s] to discharge duties pursuant to detailed rules or regulations, such as those stated on a checklist." *Ex parte Walker*, 188 So. 3d 633, 635 (Ala. 2015) (quoting *Ex parte Estate of Reynolds*, 946 So. 2d at 452, in turn quoting *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003), in turn quoting *Ex parte Butts*, 775 So. 2d 173, 178 (Ala. 2000)) (internal quotation marks omitted) (alteration provided by *Giambrone*). This is a narrow exception. Mr. Musso asserts that the officers acted "beyond their authority," (Doc. 20, p. 12; Doc. 15, p. 15, ¶ 89), but he has not alleged that the officers failed to discharge duties pursuant to detailed rules or regulations. *See Ex parte Walker*, 188 So. 3d at 635. Therefore, Mr. Musso has not alleged facts from which the Court may infer that the officers acted beyond their authority such that they would forfeit their immunity under § 6-5-338.

Likewise, Mr. Musso's allegations in his negligence and wantonness claims, taken as true, are not sufficient to establish that the officers acted with the requisite intent to overcome their discretionary function immunity. Under Alabama law, "allegations of negligence" do not satisfy the standard of "willfull[]" or "malicious[]" conduct. *City of Birmingham v. Sutherland*, 834 So. 2d 755, 762 (Ala. 2002). Likewise, allegations of "wanton misconduct . . . [do] not rise to the level of willfulness and maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*." *Ex parte Randall*, 971 So. 2d 652, 664 (Ala. 2007) (quotation omitted).

Counts VI and VII of Mr. Musso's amended complaint allege in a conclusory fashion that the officers acted "willfully. . . and unlawfully," "with reckless indifference," and "in bad faith," (Doc. 15, pp. 14–15, ¶¶ 82, 87, 89), but Mr. Musso does not provide factual allegations, which, if proven, would show that the officers acted with the requisite intent for Mr. Musso to overcome the officers' immunity defense.[5] Mr. Musso's factual allegations and titling of the counts as "Negligence and Wantonness" indicate that the claims are based on "theories of negligence and

---

[5] Mr. Musso asserts that "[the officers'] willful intent can be inferred from [Officer] Hellums stating that Plaintiff should be left uncuffed immediately before [the officers] forced Plaintiff to the ground and handcuff him." (Doc. 15, p. 15, ¶83). This factual allegation, at best, demonstrates a conscious disregard of the officers' duties sufficient to establish the officers acted wantonly. But allegations of reckless or wanton activity are not sufficient to overcome the officers' immunity. *Randall*, 971 So. 2d at 664.

wantonness" to which discretionary function immunity applies.   Mr. Musso's negligence and wantonness claims therefore "fail to overcome the barrier of state agent immunity." *Keith*, 2024 WL 1349016, at *10.

Accordingly, the Court grants the defendants' motion to dismiss with respect to counts VI and VII of Mr. Musso's amended complaint.

***

Finally, the City contends that Mr. Musso's complaint does not state a claim for municipal liability under state law because Mr. Musso has not alleged a state law claim against the officers from which the City is not immune.  (Doc. 17, pp. 8–10, 18–21).

The City is immune from liability for officers' intentional actions, including assault and battery.  *See* ALA. CODE § 11-47-190 ("No city or town shall be liable for damages for injury done . . . unless such injury . . . was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality . . . while acting in the line of his or her duty"); *Ex parte City of Gadsden*, 718 So. 2d 716, 721 (Ala. 1998) (stating that ALA. CODE § 11-47-190 "absolves a city from liability for an intentional tort committed by one of its agents.").

The City is immune from Mr. Musso's negligence and wantonness claims because the officers are entitled to immunity from these claims.  ALA. CODE § 6-5-

14

338(b) ("This section is intended to extend immunity only to peace officers and governmental units or agencies authorized to appoint peace officers."); *Ex parte City of Montgomery*, 99 So. 3d 282, 298 (Ala. 2012) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune.").

Therefore, the Court will dismiss Count IV of Mr. Musso's amended complaint.

**IV.**

For the reasons discussed, the Court grants the defendants' motion and dismisses Counts IV, V, VI, and VII of Mr. Musso's complaint without prejudice for failure to state a claim.  The Clerk of Court shall please TERM Doc. 17.

Pursuant to Section III of the initial order in this case, (Doc. 2, pp. 4–6), the parties shall please file their Rule 26(f) report and email chambers a proposed scheduling order to govern the deadlines in this matter within 14 days of this order.

**DONE** and **ORDERED** this March 16, 2026.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

15